Case number 24-3228, Peter McGowan et al. v. USA. Argument not to exceed 15 minutes per side. Mr. LaRiscia, you may proceed for the appellant. Thank you. May it please the Court, I reserve five minutes for rebuttal. Very well. My name is Sam LaRiscia. I represent the appellant in this case. It's a corporate dental practice and it's sole employee dentist. We're here because the district court relied on the split dollar regulations, interpretive regulations issued under section 61 of the code, to disallow deductions to the corporation and require inclusions to the individual shareholder. Specifically, the courts found, the district court, that the tax rules of the regulations apply and then it further stated sections 162, 419, and 83 of the code are inapplicable. We're here to submit that the split dollar regulations conflict with federal law and are invalid and not in accordance with the law or arbitrary. The law is specific. Under 162 in section 419, a company is entitled to a deduction for ordinary and necessary business expenses in the taxable year paid. 419 says in the taxable year paid, if otherwise deductible, and it's subject to certain limitations, you get a deduction in the year paid. The split dollar regulations not only eliminate a deduction in the year paid, they altogether eliminate deductions for welfare benefits. The other side may argue we get a deduction under 1.83 upon a transfer of the policy. And the problem with that is that's not a deduction for a welfare benefit. That's a deduction for money included based upon including the cash value of the policy and income. They may argue based upon matcha check this court has held in the past that it's a distribution of property if it's a shareholder employee. It's the rare day when we get two back-to-back tax cases, so it's a real pleasure. But these are hard cases. I appreciate that. It's a hard case, so I might have to slow down a little bit. But the point you were just making, is that your Loper-Bright point, that the regulations are inconsistent with the statute? I think from Loper-Bright, we come up with every statute has a best rating. And that's the guidance that was recently upheld in this court in what was a district court of Tennessee, that when a regulation's invalid, it was FedEx Corp. v. U.S. that was issued on February 13, 2025, where a tax court invalidated a regulation because it conflicts with the plain language of a statute. And courts are not pursuant. Statutes can be interpreted in various different ways. This whole matter on the surface seems quite complex. But the company that was the owner of the policy was making payments to the trust without deducting the payments on its return. I guess the argument from the government would be that your client was benefiting from the payments, but he as well was not deducting, was not ascribing these payments in any way to constitute income to himself. So, I mean, there are other regulations that pertain to what constitutes ordinary income. So, you know, the matter's maybe not as simple as looking at split-dollar regulation that solves the entire equation. Sure, Your Honor. I do believe there might be a misunderstanding in terms of what the district court said in its summary judgment opinion. The corporation did deduct contributions it made to a death benefit trust. But not to the other trust. It deducted the contributions it made to a restricted property trust. So this plan involved two trusts. It involves a death benefit trust that provided death benefit in the event of the employee's death, and the payments would go to the designated beneficiary unless some other party, such as the charity, has a claim to those proceeds. Separately, the restricted property trust was money set aside in trust for the employee, and if he stayed in service and the company continued to fund it, he would vest in that policy included in income, which he did in 2016. If for whatever reason, which happens, it happens lots of times, there's a lot of evidence of forfeitures, that the company doesn't fund that death benefit, the policy is no more. There is no more death benefit. All proceeds of that trust, then, are distributed by an independent trustee to a charity. My concern with the split-dollar- Right. And prior to the five years, he could claim that money is that, I don't want to say money, but that financial benefit. He can have that come to himself, right? Under these particular facts, he could not because that would require, essentially, a trustee who's independent defrauding a charity who has a vested interest in those proceeds. But the trustee could be appointed, and the taxpayer controls the appointment of the trustee, correct? But a trustee under Ohio law, and most laws that is independent, has the same fiduciary obligations to all beneficiaries as it does. It can't say, I'm going to favor this beneficiary employee and say, I'm going to disregard the charitable rights, because then that charity could then file a lawsuit to prevent that from occurring. But the taxpayer had the, I guess, the benefit of being able to say who the beneficiary was, period, right? Well, within a certain control, but if they fail to designate a charity or the charity no longer exists, then within the trust, the trustee can designate the charity to receive it. Well, but here, factually, the taxpayer had done the designation. The taxpayer designated a beneficiary of the Restricted Property Trust, but that charity could not be something that the taxpayer benefits from. The taxpayer could not have a donor-advised fund. It could not have a private foundation, had it be a 501c3 public charity. And the taxpayer doesn't, he paid tax on all the money that went into the Restricted Property Trust, even though he has no right to it. He loses all that money. He doesn't get the tax back, and he doesn't get a charitable deduction, because it's the trust that transfers it to a charity that actually makes a contribution to a charity. My concern, getting back to Judge Clay's question, is the split-dollar regulation is interpreting Section 61 of the Code. It's not interpreting Section 162 of the Code, which addresses ordinary and necessary business expenses. It's not addressing or interpreting Section 419 of the Code, which allows for welfare benefit funds. And to even get to the split-dollar regulations to be applicable in this particular case, you have to rely on what's called attribution rules. You know, the taxpayer gets to designate the death benefit to go to his wife, and see that it's pertinent in that regard as Regulation Section 1.61-22B2 2C1. How is that benefit to the taxpayer taken? How would that be taken account of from an income perspective if your client didn't have to pay any income tax? Well, in this particular case, the taxpayer, whenever the company funded it, was instructed to include the economic benefit of life insurance policy. So if you die in the future, there's some equation saying this is the value to it. So technically, he does. In this particular case, we note he didn't. So those death proceeds likely would have been taxable to the employee beneficiary when they received them. But she was designated as a beneficiary in this case, and it's not the same in all cases, because sometimes you just have employees that aren't owners. But in this particular case, the business purpose, again, which wasn't even addressed, it was said inapplicable by the district court, was to further the continuity of the business. And in a dental practice for which there's only one dentist generating revenue, you need liquidity. And if we examine the facts of this business purpose, the evidence supports they did this specifically for a business purpose because the company didn't have funds, it was insolvent, they had disability benefits in case this employee died, they had personal life insurance outside, they had personal disability insurance. The only thing they didn't have to continue the business was if he died, who was going to get proceeds, where's the funds going to come from when the business has nobody generating revenue to continue the business, hire a new dentist, restructure the business to allow it to continue to operate. Why didn't they direct the money back to the company then rather than to his wife? Well, the reason is that she needed the liquidity to continue the business, and we structured this plan specifically in accordance with the rules set up by Congress under 264. If the beneficiary of the death benefit would have been the company, then arguably there may not be a deduction because they have a beneficial interest in the death benefit. I have a couple of questions. One, what was the purpose of creating RPT? Why did you need to do that? Couldn't the DBT have just provided for if there's no payments within five years it goes to the zoo? Because it's an incentive, one, to retain the employee, but we have a pure whole life policy, and if you keep funding what's called the death benefits funded with the current cost of insurance, that has to be paid in every year of the policy. It's an off-the-shelf policy, and it's the same amount every year. That's the $37,000? Yes, and the money that comes from the restricted property trust is going to paid-up additions. So the paid-up additions increase the cash value. Why couldn't you have done that through DBT? Why did you need RPT? Because the paid-up additions are not providing the current year death benefit. They're paying paid-up death benefits and cash value. The business purpose is tied to the death benefit, the amount necessary to fund the death benefit trust, and when he vests, he has to continue to pay it, that premium, to have the policy in place and continue to fund the premium each year. And with all these paid-up additions that went in over the five-year period, now the cash value is available to the employee on an after-tax basis to continue to fund the death benefit. That couldn't have been done? I'm sorry, I'm just joking. That couldn't have been done through DBT? That all couldn't have been done through? It's just obviously odd to me that you created the RPT, and I couldn't quite figure out why. It's not dispositive necessarily, but this couldn't have all been done through DBT? I do not believe so because of the fact that the current year death benefit is what the ordinary necessary business expense is tied to. There's additional cash value. 100% of the additional money is cash value. And if I looked at neonatology, which is a 2000 tax court case, they had a term premium and excess contributions that eventually you would always get, and you can then put that into a whole life insurance policy. But all they needed to fund in that case was a term premium. All we need to fund is the base policy premium, which is the $37,222. I know you're out of time, so my concern about this case, it just feels like the taxpayer controls everything that's happening in this structure. And this is different than if you had a business where there are multiple owners and they're trying to incent someone to stay, and so they give them a benefit of a life insurance policy, maybe payable to the employee, maybe payable back to the company. But here the taxpayer runs the entire thing. There's this complicated corporate structure. There's different options depending on whether he dies or stops paying or the term expires. But the taxpayer just feels like controls the whole thing, including the taxpayer could swap out the zoo or could just remove that provision from the agreements. I don't know if this is legally, partly legally significant, but to me I can understand a reason why there would be a tax regime that would sort of stop this sort of tax shelter, which feels different than a big company that's got a bunch of employees and they're giving out life insurance to one of their employees because that employee doesn't go back and control the whole corporate structure the way your client does here. Does that make sense? It does, Your Honor, and this is not limited to just a single shareholder type arrangement. It is available to other companies, but what I would suggest is that these are the rules established by Congress, and the split dollar regulation is an interpretive regulation established by the IRS, and if we can prove to the district court under 162 and 419 that we comply with the rules established by Congress, we should get that opportunity. What are the checks? That's the last question I'll ask. What are the checks? Because the tests do speak to who has access to the money. What are the checks on your client in terms of basically always controlling where these monies go? The trustee and the evidence submits that the trustee 100 percent determines where the money is. He can remove the trustee, right? He could. Sorry, not last question, but he could remove the trustee. He could require that the RPT structure be changed, that the payout be changed. He also controls when the payments are going to be made. In other words, the idea that the money goes to the zoo only happens if the payments aren't made, and who's the one controlling whether the payments are made? Basically him. The Supreme Court in Byron versus the United States long ago said a small business is subject to various vicissitudes of business and litigation that prevent it from being able to continue that benefit. So to a certain extent it's out of the employee's control, but we know certainly 100 percent of the assets are in the trustee's control, whether it be the current trustee, a subsequent trustee, they still have their own obligations. Thank you, Your Honor. Just one moment. I know we're out of time, but going back to the point we were discussing earlier, the taxpayer has an interest in the cash value of the life insurance contract, and if the contract is not renewed at the end of the term, the taxpayer receives the cash value of the policy. So with respect to that sum of money, where does it ever get picked up as income to the taxpayer? If it ever does, it seems that it doesn't. I know the taxpayer picked it up in income in 2016 when the risk of forfeiture under the Art Restricted Property Trust lapsed. That allowed the policy to be transferred to him, which is the first time he had any access to the cash value. He pays tax on 100 percent, less any amounts he already paid tax on, which was $12,700. Wait a minute. If what lapsed, then what was transferred? If you could slow down and explain what you're saying there. Under the terms of the trust, after the required period of funding the death benefit trust ends, the employee is entitled to the money. Prior to that, the charity or the employee could be entitled to it. After it— Well, that's what I'm asking, though. Under the alternatives available, if the money goes to the taxpayer, he never pays taxes. He established the company that took out the policy, and then the policy lapsed. He gets the cash value benefit. That whole sum of money, nobody ever pays it. He earned it, your client, but nobody ever pays taxes on it. In this particular case, the taxpayer paid tax on the 100 percent of all monies in that policy in 2016, filed for a refund, and the IRS gave that refund back because they wanted tax to him in 2014 and 2015 before he had rights to it. So he did pay tax on 100 percent of all value in that policy. Thank you, your honors. All right. Thank you. May it please the court. Paul Aloulis on behalf of the United States. In this case, taxpayers purchased a tax avoidance strategy dressed up as an employee welfare benefit plan. Through that strategy, the corporation took tens of thousands of dollars in deductions annually, and Dr. McGowan deferred any tax on the related income indefinitely. The district court correctly held that taxpayers were not entitled to those tax benefits. First and foremost, we believe that this court should affirm, because the district court properly applied the split dollar regulation to the transaction in this case. The split dollar regulation is a proper application of the tax code and longstanding case law to specific types of transactions. The questions this morning so far from the court point to what I think is an important issue here, which is that taxpayers claim to be providing what effectively is a very simple welfare benefit from a corporation wholly owned and controlled by one single employee, Dr. McGowan, a life insurance policy, a death benefit. But they've done it through an incredibly complex, Byzantine, needlessly complex system involving a trust, two sub-trusts, transfers of funds between the trusts, security interests being granted from one trust to another trust, a needless charity clause that accomplishes no business purpose whatsoever. Is the needlessness legally significant? I mean, I just sort of asked about it because I wasn't quite sure, but is that legally significant? It is significant, Your Honor, because as taxpayers claim that the deductions would be allowed here under Section 162 of the Internal Revenue Code, which allows for a deduction for all ordinary and necessary business expenses incurred, the needless nature in particular of the charity clause demonstrates that this is not an ordinary and necessary business expense. There's no explanation as to why the business would be furthered or need to engage in charitable donations of this type. In fact, it's literally the opposite. The business would be better served if the funds were not subject to this charity clause. As we pointed out in our brief, the charity clause would only be triggered at a time when either Dr. McGowan or the company or both were in some sort of financial distress and they were unable to make the annual payments on the insurance policies. That's exactly the time that the business would need the money in order to continue operating. And yet what we have in this situation is this charity clause, where exactly when the money is not available to pay the premiums, when the business is under distress, the money simply just disappears and goes off to a charity. So what your friend would say a feature, you would say is a bug, because your friend on your side points to the trustee who controls, I guess, I don't know if it's a trustee. Is it one trustee for both sub-trusts or one trustee just for the main company? I'm not entirely sure. But the point is that the trustee has some control over the happenings, I guess, at least of RPT and has the ability to somehow limit the owner from changing the payments out to the charity. I got your friend on your side's point that the trustee sort of cut off, created some independence, I guess, or separation between the owner, who seems to own most things in this structure, and the trustee who has some control over how the trusts work. Well, the way the transaction is structured in the benefit trust agreement, which is the main document controlling most of this transaction, it's very clear that the trustee's power in that regard is really toothless. There's a number of provisions that effectively give Dr. McGowan complete control over everything that happens. The trustee can be removed at any time without any prior notice. A new trustee can be selected by Dr. McGowan, as long as it's not a trustee that's associated with the business. It has to be somebody else. It could be somebody separate, not his wife, not an employee. The new trustee is free to then change the terms of the benefit trust agreement as the trustee sees fit, so long as it's consistent with the purposes stated in the benefit trust agreement. Now, importantly, charitable giving is not one of the purposes stated anywhere in the benefit trust agreement. That is not one of the reasons given. The reasons given for this transaction, the business purposes that are claimed, the main business purpose that they claim is really business perpetuation. And, you know, as I mentioned earlier, this transaction does the opposite. It's anti-business perpetuation, because at a time when the funds would be needed, the funds are drained away to a charity. So that business purpose simply is illusory. The other stated business purpose for the transaction is that it's there to motivate the employees who are receiving the benefit. Well, the only person in this case that's receiving this benefit is Dr. McGowan. None of the other employees of the practice are receiving this benefit. But he also owns 100 percent of the business. It makes absolutely no sense to say that he needs to provide this benefit to himself through this corporation in order to motivate himself to continue working in the furtherance of the better interests of the business. So the only stated business purposes for this transaction are both illusory. They're both illusory. The only thing that's left as a possible motivation for this transaction is the tax savings. That's it. That's the only reason why this structure exists in this very complex way, is to try to get around the restrictions in the split dollar regulations, to try to get around the ordinarily necessary requirement in Section 162, to try to get around the requirements in Section 419 that the payments be part of the qualified cost of the business. Like many of the taxpayers that have come before in the cases that we cite in our brief, Curcio, Neonatology, the Ardangelos, in all of those cases, this is one more effort to try to use these types of whole life insurance policies which build up cash value year after year after year, and attempt to transfer those funds from a wholly owned corporation to the corporation's owners, who are also employees, in a way that avoids taxation. And the courts have had no problem when confronted with these fact scenarios in the past in finding them invalid under a variety of different theories under the Internal Revenue Code. And this court should do the same, whether applying the split dollar regulations. Part of the complexity in my mind is the creation of this RPT, this second subtrust. But your friend on the other side said that was necessary, given the structuring of the payments to the different trusts. Do you agree with that? That jumped out to me as sort of, that did seem complicated, but I'm by no means a tax expert. I think that they view it as necessary because they view it as creating the conditions which they think helps them to get out of taxation under the Internal Revenue Code. That's why they view it as necessary. It's certainly not necessary to provide this benefit that they claim to be providing from the company to Dr. McGowan. It's not needed at all. Shouldn't DBT have had a provision that if the policy wasn't paid, money goes to the zoo? I think it could have, sure. I think still under those circumstances, that would still be totally unnecessary to any business purpose, though. The only reason why they've created what they're calling a risk of forfeiture here is because they think that that helps to avoid current taxation by Dr. McGowan on the money that's being given to him under Section 83. They cite Section 83 of the Internal Revenue Code as deferring recognition of tax so long as the benefit that's being provided, the funds that are being provided, are subject to a substantial risk of forfeiture. And they think that this charity clause creates that substantial risk of forfeiture. That's why they've put it there. But, in fact, it doesn't create a substantial risk of forfeiture for a number of reasons. The first reason is that Section 83 specifically and clearly defines substantial risk of forfeiture to mean that the funds that are being given to the employee, the benefit, is conditioned upon the performance of services in the future by the employee. In this case, that's not what it's conditioned upon. In this case, the transfer of the benefit is conditioned only upon the payment of the insurance premiums on an annual basis. It has nothing to do with what further services Dr. McGowan may or may not provide to the company. In the typical situation where this arises, you might have something like a grant of stock options or something like that, and it may be conditioned upon, for example, an employee performing some service, such as completing the delivery of a project or completing a certain increase in revenues over some period of time, something like that. I think typically in these scenarios what happens is if the employee does not complete those future services, the funds revert back to the company, typically. They just disappear. Here, that's not what's happening. They're diverting it out to a charity, and they think that it's creating the substantial risk of forfeiture, but it's not. Different question. Your friend on the other side, certainly in their brief, and I think this morning we're invoking sort of the Loper-Bright case and what impact, whether these regulations are consistent with the statute and what that means for us. And we've had some recent cases on applying Loper-Bright. So does that change our analysis, and if so, how? Or is there something we should be doing differently now that we have that decision? I don't think so, Your Honor. Certainly Loper-Bright changed the framework that the court should employ when deciding whether a regulation is valid as applied to particular facts in a case that's presented to them. For sure, Loper-Bright has changed that analysis. I think in this case it makes no difference, though. The split dollar regulation is clearly consistent with not only Section 61, but also Section 162 and Section 419, which are the code sections that taxpayers argue are inconsistent with the regulation. But they're not, as we point out in our brief. The provisions of the split dollar regulation that require Dr. McGowan to recognize the economic benefits flowing from the transaction in current income every year as the payments are made is really an application of what's known as the economic benefit doctrine, something that has been recognized by courts, including the Supreme Court, for many, many, many years. When an employer provides some benefit to an employee in the course of their employment, the economic benefits that flow from that provision are reportable by the employee as income in the year provided. And that has been held, in fact, by this Court in the Kennedy case, which is in the 1940s at some point. It's specifically applied to life insurance contracts. And in that case, this Court held, in fact, that the interposing of a trust to provide those benefits doesn't change the analysis. The employee is still required to report the economic benefits. Have there been other circuits that have addressed Treasury regulations post-Loper-Bright? And have they given any gloss on whether Treasury regulations have any sort of special place in terms of continued, I don't want to use the word deference, but continued reliance that courts can permissibly allow in that context under Skidmore or something else? There are none that I'm aware of, Your Honor, but as Your Honor just mentioned, in Skidmore, which the Supreme Court cited favorably in Loper-Bright, I think in Loper-Bright the Supreme Court clearly was drawing from Skidmore and pointing courts in that direction as an alternative for thinking about how to review statutes in the absence of Chevron, excuse me, regulations in the absence of Chevron. And in Skidmore itself, the Supreme Court pointed out that it had long recognized that Treasury regulations are due a certain degree of deference, given the complexity of the area and given the charge to the Secretary to ensure that the code be properly considered. I would also point out that Section 7805 of the Internal Revenue Code does give specific authority to the Secretary to draft regulations that are needful to carry out the mandates of the Internal Revenue Code. And I think when all of those things are taken into account, this regulation surely passes muster. And I would say, obviously the district court originally analyzed this under Chevron, because Loper-Bright hadn't yet been decided. If the taxpayers were correct here that the regulation was directly conflicting with Section 162 and directly conflicting with Section 149, it probably wouldn't have survived a Chevron challenge either. But it's not conflicting with those statutes. It's totally consistent with those statutes in the way that it treats both the requirement of reporting income and in the way that it treats the deferral of income. So I think for all of those reasons, we would encourage the Court to affirm if there's no further questions. Thank you. I do submit that the Treasury regulation is inconsistent with the regulation. The regulation disallows any deductions for welfare benefits when the statutes allow them in the year paid. And under 162, you have to have a finding, whether it's otherwise deductible under the code, to be a deductible welfare benefit. And we never had the opportunity to show it's deductible under 162, because the district court held it's inapplicable. The split dollar regs apply. Judge Radler, to your question, I think there were two cases. Dayton Power and FVRC from this circuit in 2025 dealt with regulations after Loperbright. And then there's also the FedEx Corp v. U.S. in the Western District of Tennessee, February 13, 2025. Are any of those Treasury regulations? They are not Treasury regulations, Your Honor. As to the interpretive rulemaking authority of the IRS under 7805, in order for them to exempt any deductions for welfare benefit funds, I believe that Congress would have to expressly grant them the authorization to say, in this particular context, our rules under 162 and 419 don't apply, if under your regs it meets the elements of split dollar, which we don't believe is satisfied either, because there's no agreement between an owner and a non-owner of this policy. The welfare benefit fund is a separate taxable trust taxpayer, that under a lot of jurisprudence in this circuit, Summa Holdings, Humana, Inc., Kerman, Frankline v. U.S., a Supreme Court case from 1978, wouldn't allow you on these facts to disregard the trust as a separate taxpayer. In getting back to your question, Your Honor, Justice Radler, about why we need the death benefit trust and the restricted property trust, the death benefit trust only provides a death benefit. That's what a welfare benefit is. At the end of funding, there is no more death benefit because there's no death benefit until the next policy premium is paid. There's no life insurance. So now all we have is a compensatory benefit that is paid out to the employee through the restricted property trust. One last point. I don't believe the charitable clause is toothless. It serves a real purpose. A business has long-term business purposes and short-terms. They might one day want to fund a big move and a death benefit and keep the business afloat, but maybe business changed and now they have a short-term purpose and they can't fund on the long-term. They've got to survive for the short-term. Unfortunately, in this case, everything goes to a charity. And that would be true whether we have shareholder employees or just owner employees or just employees. If in the short-term the business is failing, which in this case they won't be able to pay the premiums during the five-year term, that justifies sending the money to the zoo? I didn't quite follow the logic. They're never going to get the money back because once it's in the trust, under the terms of the trust, it is going to go to the zoo. They no longer have further expenditures of $37,000. They can reappropriate those funds to address whatever needs they have currently instead of continuing to fund it. That is the change in circumstances businesses always have to deal with. I know my law firm had to deal with a circumstance where we signed a new lease space for a lot of growth, and then we were shut down by COVID. And now we had to recalibrate what we were doing. Businesses change, they have to adapt, and this is what this particular plan does in the context of a shareholder employee. In other contexts, it's simply to retain key employees. And I would submit that since 1934, taxpayers have been allowed to structure their affairs to minimize taxes. We're not avoiding taxes here. We pay tax on 100%. It's just the timing. And the timing in this particular case is set up with the statutes in mind. The court ignored those statutes. The court relied upon the Treasury regulations. And for that reason, we ask you to vacate this back to the district court for further proceedings under 162 and 419. Thank you, Your Honors.